**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EXPORT COMMODITY LLC,<br><br>        PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>        DEFENDANTS. | CASE NO.: 1:23-cv-15059<br><br><br>**FILED UNDER SEAL** |

## COMPLAINT

Plaintiff, Export Commodity LLC ("ExCom" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A, attached hereto (collectively, "Defendants"), and using at least the identified online marketplace accounts listed on Schedule A (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, and 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331.

2.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Illinois and within this Judicial District.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since each Defendant directly targets consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Seller Aliases identified on Schedule A. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold, and continues to sell counterfeit products that infringe upon Plaintiff's Trademark and/or Copyrights. Each Defendant is committing tortious acts, is engaging in interstate commerce, and has wrongfully caused substantial injury in the State of Illinois.

## INTRODUCTION

4.     This action has been filed to combat the online trademark and copyright infringement of Defendants, who trade upon Plaintiff's valuable trademark and/or copyrights by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademark, as well as to prevent Defendants' selling of unauthorized products that use, are based on, and/or are derived from copyrighted subject matter created by ExCom.

5.     Plaintiff is the owner of the federally registered ArmedPet trademark, listed in the table below, and a true and correct copy of which is attached hereto as Exhibit 1 (referred to as the "ArmedPet Trademark" and "Trademark Registration" interchangeably). The Trademark Registration constitutes *prima facie* evidence of its validity and of ExCom's exclusive right to use the ArmedPet Trademark pursuant to 15 U.S.C. § 1057(b). Plaintiff is also the owner of the ArmedPet federal copyright registrations, which have effective registration dates as early as 2020, and are attached hereto as Exhibit 2 (hereinafter referred to as "ArmedPet Copyrights"). The copyrighted images are shown in the table below.

2

| TRADEMARK REGISTRATION | | | |
|---|---|---|---|
| REG. NO. | WORD MARK | CLASS(ES) | REG. DATE |
| 6830822 | **ArmedPet** | IC 035. US 100 101 102. G & S: On-line retail store services featuring pet toys and pet supplies excluding pet food. | Aug. 30, 2022 |

| COPYRIGHTED IMAGES | | | |
|---|---|---|---|
| ARP-1 (VA0002361035) | ARP-2 (VA0002361035) | ARP-3 (VA0002361035) | ARP-4 (VA0002361035) |
|  |  |  |  |
| ARP-5 (VA0002361038) | ARP-6 (VA0002361038) | ARP-7 (VA0002361038) | ARP-8 (VA0002361038) |
|  |  |  |  |
| ARP-9 (VA0002361038) | ARP-10 (VA0002361038) | ARP-11 (VA0002361038) | ARP-12 (VA0002361038) |
|  |  |  |  |
| ARP-13 (VA0002361038) | ARP-14 (VA0002361038) | ARP-15 (VA0002361035) | ARP-16 (VA0002361035) |
|  |  |  |  |



| ARP-17 (VA0002361035) | ARP-18 (VA0002361038) | ARP-19 (VA0002361038) | ARP-20 (VA0002361035) |
| ARP-21 (VA0002361038) | ARP-22 (VA0002361038) | ARP-23 (VA0002361038) | ARP-24 (VA0002361038) |
| ARP-25 (VA0002361035) | ARP-26 (VA0002361035) | ARP-28 (VA0002361038) | ARP-32 (VA0002361038) |
| ARP-34 (VA0002361038) | ARP-35 (VA0002361038) | ARP-36 (VA0002361038) | ARP-41 (VA0002361038) |
| ARP-42 (VA0002361038) | ARP-43 (VA0002361038) | ARP-44 (VA0002361038) | ARP-56 (VA0002361038) |

6.    In an effort to illegally and deceptively profit from the ArmedPet Trademark and ArmedPet Copyrights, Defendants created numerous online marketplace accounts and online stores, intentionally designed in look, feeling, and suggestion to give the impression to consumers that they are legitimate websites and merchants selling products manufactured by or authorized by ExCom (the "ArmedPet Products"), with Defendants' ultimate intention being to deceive unknowing consumers into purchasing unauthorized and infringing ArmedPet Products (hereinafter referred to as "Counterfeit ArmedPet Products" or "Counterfeit Products").

7.    Defendant Internet Stores share numerous unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between Defendants, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

8.    Plaintiff filed this action to combat Defendants' ongoing infringement of Plaintiff's ArmedPet Trademark and ArmedPet Copyrights (collectively referred to as "ExCom Intellectual Property"). Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the creative content, and tarnishment of its valuable trademark and copyrights as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

9.    Export Commodity, LLC was established in 2018 in the State of Texas. In 2020, during the height of the COVID-19 pandemic, while ExCom was expanding into the world of 3D-printing with essential PPE and diverse utility items, the idea to create lighthearted and whimsical

5

products was born. As a result, ExCom established ArmedPet, a pet-centric brand focused on designing and crafting products to ensure fun, functionality, and love for all pet-enthusiasts.

10. The initial product which launched the ArmedPet brand is a simple adjustable design that consists of two toy-sized plastic arms on either side of an articulable wire, which is meant to be worn by pet chickens to make them look like they have arms – either of the human or dinosaur variety (the "ArmedPet Products"). It provides hours of endless amusement and is guaranteed safe and harmless to the chicken. Upon launching, ExCom received an overwhelming influx of orders across the major marketplace platforms such as Amazon, Etsy, and eBay.

11. Export Commodity LLC is in the business of developing, manufacturing, marketing, and distributing ArmedPet Products.

12. ExCom advertises, promotes, distributes, and sells its products through its own websites and ecommerce stores – armedpet.com and goodbuy.ai – along with storefronts on Amazon, Etsy, eBay, and Walmart. Examples of its storefronts are shown below:



13.     The ArmedPet Copyrights contain images of the ArmedPet Products which have been used on ExCom's websites, storefronts, and in the marketing of ArmedPet Products since 2020. The ArmedPet Copyrights are a valuable asset of ExCom.

14.     The ArmedPet Trademark has been used exclusively by ExCom and has never been abandoned. The registration is distinct, valid, subsisting, and in full force and effect. The registration of the ArmedPet Trademark constitutes *prima facie* evidence of its validity and of ExCom's exclusive right to use the ArmedPet Trademark pursuant to 15 U.S.C. § 1057(b).

15.     ExCom has used the ArmedPet Trademark for many years and has continuously sold products under the ArmedPet Trademark. As a result of this use, common law trademark rights have also amassed in the ArmedPet Trademark. The ArmedPet Trademark is a valuable asset of ExCom.

16.     ArmedPet Products typically include the registered ArmedPet Trademark and/or the ArmedPet Copyrights.

17.     ExCom has invested substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in the ArmedPet Products. The ArmedPet Trademark and the ArmedPet Copyrights have been continuously used, and are, and have been, the subject of continuous marketing and promotion by Plaintiff in the industry and to consumers.

18.     The success of the ArmedPet Products is due in large part to the marketing, promotional, and distribution efforts of ExCom as well as its dedication to the use of high-quality materials and processes in making the ArmedPet Products. Additionally, ExCom owes a substantial amount of the success of the ArmedPet Products to its consumers, and interest that its consumers have generated.

19.     As a result of the efforts of ExCom, the quality of its ArmedPet Products, the promotional efforts for its products and designs, press and media coverage, and widespread marketing, members of the public have become familiar with the ArmedPet Products, ArmedPet Copyrights, and ArmedPet Trademark, and associate them exclusively with ExCom.

20.     Export Commodity LLC has made efforts to protect its interests in and to the ExCom Intellectual Property. ExCom is the only entity and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the ArmedPet Copyrights and/or ArmedPet Trademark. Plaintiff has not licensed or authorized Defendants to use the ArmedPet Copyrights and/or ArmedPet Trademark.

## THE DEFENDANTS

21.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois, and within this Judicial District, through the operation of fully interactive commercial websites and online marketplace accounts operating under the Seller Aliases identified on Schedule A. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit ArmedPet Products to consumers within the U.S., Illinois, and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

22.     The success and widespread popularity and recognition of the ArmedPet brand and ArmedPet Products has resulted in significant counterfeiting and intentional copying. Plaintiff has identified numerous Seller Aliases linked to fully interactive websites and marketplace listings on platforms which include, but are not limited to: Alibaba, AliExpress, Amazon, DHGate, eBay, Etsy, Joybuy, Shopify, Temu, Walmart, and Wish (collectively, "Online Marketplaces"), including the

Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit ArmedPet Products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

23.     As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

24.     Upon information and belief, Defendants facilitate sales by designing their Internet stores and product listings to appear to unknowing consumers as authorized online retailers, outlet stores, or wholesalers selling genuine ArmedPet Products, through the use of ExCom's Intellectual Property. Defendant Internet Stores look sophisticated and perpetuate an illusion of legitimacy – they accept payment in U.S. dollars via credit cards, Western Union, and PayPal; they often include

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).
[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

images and design elements that make it difficult for consumers to distinguish these unauthorized sites from an authorized website; they offer "live 24/7" customer service; and, they use indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

25.     Upon information and belief, Defendants also deceive unknowing consumers by using the ArmedPet Trademark without authorization within the content, text, and/or metatags of their websites, in order to attract and manipulate search engines into identifying the Defendant Internet Stores as legitimate websites for authentic ArmedPet Products. Defendants also employ other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores show up at or near the top of relevant search results, including tactics to propel new domain names to the top of search results after others are shut down. These tactics are meant to, and are successful in, misdirecting consumers searching for genuine ArmedPet Products.

26.     Upon information and belief, Defendants operate in a collective and organized manner, often monitor trademark infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other – utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

27.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet

---

[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities and other relevant information. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed on Schedule A attached hereto, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

28.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) similarities of the Counterfeit ArmedPet Products, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated; and, (3) other notable common features such as use of the same naming conventions, registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, and the use of the same text and images.

29.     Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through platforms such as eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), Payoneer, Inc.

("Payoneer"), Stripe, Inc. ("Stripe"), ContextLogic, Inc. ("Wish"), Etsy, Inc. ("Etsy"), DHGate, Inc. ("DHGate"), Shopify, Inc. ("Shopify"), Walmart, Inc. ("Walmart"), Amazon Payments, Inc. ("Amazon"), and Alipay US, Inc. ("Alipay") (collectively, "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, and upon information and belief, and as financial transaction logs in previous similar cases have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

30.     Defendants, without any authorization or license, have knowingly and willfully infringed Plaintiff's rights in the ArmedPet Trademark and Copyrights in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois.

31.     In committing these acts, Defendants have, among other things, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to ExCom: infringed upon and used counterfeit versions of the ArmedPet Trademark and ArmedPet Copyrights; created, manufactured, sold, and/or offered to sell counterfeit products and/or products which infringe upon ExCom's Intellectual Property; used ExCom's Intellectual Property in an unauthorized manner in order to sell, advertise, describe, mislead, deceive, and trade upon the ArmedPet brand; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of Export Commodity LLC.

32.     Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Trademark and/or Copyrights, and the sale of

Counterfeit Products. Defendants have a direct financial interest in, and gain a direct financial benefit from infringing activity and realize profits from the sale of Counterfeit Products.

33.     By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, each Defendant also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

34.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

35.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

36.     Defendants use counterfeit imitations of Plaintiff's ArmedPet Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing and counterfeit goods.

37.     Without the authorization or consent of ExCom, and with knowledge of ExCom's well-known ownership rights in its ArmedPet Trademark, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the ArmedPet Trademark and/or used spurious designations that are identical with, or substantially indistinguishable from, the ArmedPet Trademark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

38.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with ExCom and the ArmedPet Products, in or affecting

interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the ArmedPet Trademark through their participation in such activities.

39.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the ArmedPet Trademark to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Export Commodity LLC, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

40.     Defendants' unauthorized use of the ArmedPet Trademark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by ExCom, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the ArmedPet Trademark.

41.     Defendants intentionally induce others to infringe upon Plaintiff's Trademark and/or continues to supply services with the knowledge that the recipient is using such services to engage in such trademark infringement. Defendants have the right and ability to supervise the infringing activity and have an obvious and direct financial interest in the counterfeit activity.

42.     Defendants' actions constitute willful counterfeiting of the ArmedPet Trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

43.     Defendants' continued intentional use of the ArmedPet Trademark without the consent or authorization of ExCom, constitutes intentional infringement of ExCom's federally registered ArmedPet Trademark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

44.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to ExCom, its business, its reputation, and its valuable rights in and to the ArmedPet Trademark and the goodwill associated therewith, in an amount as yet unknown. ExCom has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to ExCom and its valuable ArmedPet Trademark.

45.     Based on Defendants' actions as alleged herein, ExCom is entitled to injunctive relief, damages for the irreparable harm that ExCom has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

46.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.     Plaintiff, as the owner of all right, title, and interest in and to the ArmedPet Trademark has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

48.     Plaintiff's Trademark is inherently distinctive and is registered with the United States Patent and Trademark Office on the Principal Register; the ArmedPet Trademark has been continuously used and has never been abandoned; the registration for the ArmedPet Trademark is valid, subsisting, and in full force and effect.

49.     Defendants' promotion, marketing, offering for sale, and sale of infringing and Counterfeit ArmedPet Products has created, and continues to create, a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or as to the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

50.     By using the ArmedPet Trademark in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

51.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of ExCom, its ArmedPet Products, and the ArmedPet Trademark.

53.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to ExCom by depriving Plaintiff of sales of its ArmedPet Products and by depriving ExCom of the value of its ArmedPet Trademark as a commercial asset in an amount as yet unknown.

54.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.     Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine ArmedPet Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

57.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*.

58.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

59.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.     The ArmedPet Copyrights are the subject of a valid copyright registrations.

61.     Plaintiff, at all relevant times, has been the holder of the copyright registrations and exclusive rights of and belonging to ExCom, including but not limited to the ArmedPet Copyrights and derivative works.

62.      These copyright registrations are of significant value and have been produced and created at considerable expense.

63.     The ArmedPet Copyrights are used in the marketing and promotional efforts of ExCom when marketing, selling, and offering for sale authentic ArmedPet Products.

64.     Upon information and belief, Defendants had access to the copyrighted work through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent, and engaged in, and continue to engage in acts of widespread infringement.

65.     ExCom is informed and thereon alleges, is informed, and thereon alleges, that Defendants further infringed the ArmedPet Copyrights by making, or causing to be made, derivative works by producing and distributing unauthorized reproductions of the ArmedPet Copyrights, without the permission of ExCom.

66.     In having used, and continuing to use, reproductions or derivative works of Plaintiff's copyrights, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. The Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 *et seq.*).

67.     Further, as a direct result of the Defendants' acts of copyright infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's copyrights. ExCom is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to said infringement.

68. Defendants, with knowledge of Plaintiff's Copyrights, indirectly infringed Plaintiff's Copyrights by encouraging, causing, and materially contributing to infringing conduct by others. Defendants knowingly engaged in, supervised, and/or controlled infringing activity and the sale of Counterfeit Products, and have a direct financial interest in, and stood to gain a direct financial benefit from, such infringing activity.

69. As a result of the Defendants' infringement of Plaintiff's exclusive rights under U.S. Copyright Law, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

70. The conduct of the Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law. As such, pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's Copyrights, and ordering that Defendants destroy all unauthorized and/or infringing copies and reproductions of Plaintiff's copyrights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the ArmedPet Trademark and/or Copyrights, or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized ArmedPet Product, or is not authorized by Plaintiff to be sold in connection with ExCom's Intellectual Property;

19

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using ExCom's Intellectual Property;

c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the ArmedPet Trademark, or which are derived from the ArmedPet Copyrights;

d. further infringing ExCom's Intellectual Property and damaging Plaintiff's goodwill;

e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendant product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which use ExCom's Intellectual Property;

f. operating and/or hosting websites at the Defendant Internet Stores, and any other domain names registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which use ExCom's Intellectual Property;

2)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

    a.   disable and cease providing services for any accounts through which Defendants engage in the sale of unauthorized products, which use ExCom's Intellectual Property, including any accounts associated with Defendants listed on Schedule A;

    b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which use ExCom's Intellectual Property; and,

    c.   take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3)   That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4)   For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered Trademark, pursuant to 15 U.S.C. § 1114;

5)   That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6)   For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7)   That Plaintiff be awarded actual damages, statutory damages, and/or other available damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

8)   That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

9) Any and all other relief that this Court deems just and proper.

Dated: October 27, 2023

Respectfully submitted,

*/s/ Alison K. Carter*
Ann Marie Sullivan
Alison K. Carter

**SULLIVAN & CARTER, LLP**
2743 N. Ridgeway Ave.
Chicago, Illinois 60647
Telephone: 929-724-7529
E-mail: a.carter@scip.law

***ATTORNEYS FOR PLAINTIFF***